UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LOUIS MARTINA,

              Petitioner,

    -vs-

DAVID A. ROCK

              Respondent.
_____

**DECISION AND ORDER**
**No. 09-CV-06345T**

## I.  Introduction

*Pro se* petitioner Louis Martina ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered October 21, 2005, in New York State, Supreme Court, Erie County, convicting him, after a jury trial, of three counts of Rape in the First Degree (N.Y. Penal Law ("Penal Law") § 130.35 [4]), one count of Criminal Sexual Act in the First Degree (Penal Law § 130.50 [4]), one count of Course of Sexual Conduct Against a Child in the First Degree (Penal Law § 130.75 [1][b]), one count of Endangering the Welfare of a Child in the First Degree (Penal Law § 260.10 [1]), and one count of Falsely Reporting an Incident in the Third Degree (Penal Law § 240.53 [3][a]). Petitioner was sentenced as a second violent felony offender to five consecutive terms of twenty-five years imprisonment.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

-1-

## II.  Factual Background and Procedural History

In the spring of 2003, E.R. ("E.R" or "the victim") was approaching her ninth birthday, and E.R.'s mother, Rhonda Taylor ("Taylor"), met Petitioner on a chat line.  Petitioner started visiting Taylor's home where E.R. lived with her mother.  In the summer of 2003, Petitioner moved into Taylor's home.  E.R. had never met her biological father, and Taylor had not seen him since she became pregnant with E.R.  After Petitioner moved into Taylor's home, E.R. began calling him "dad."  Trial Trans. [T.T.] 312, 407-410.

Petitioner lived at Taylor's home for approximately two years. In October of 2004, Petitioner's relationship with Taylor ended and he moved out of her home and into the home of Sharon Hall ("Hall"), a friend of Taylor's.  T.T. 414.  Sometime during that same month, Petitioner called Taylor and told her that he needed help moving boxes at Hall's home.  Taylor went to Hall's home with E.R. and E.R.'s little brother.  Petitioner told E.R.'s brother to go outside and rake the backyard.  While E.R.'s brother was outside, Petitioner had sexual intercourse with E.R. in one of the bedrooms of the house.  He also put his penis in her mouth.  T.T. 306-307.

On November 17, 2004, while E.R. was waiting for the bus to take her to school, Petitioner appeared on the corner and told her to go to Hall's home.  E.R. walked to Hall's home and went inside. There, Petitioner had sexual intercourse with E.R. in a bedroom

and, afterwards, put his penis in her mouth.  T.T. 303-304.  E.R. testified at trial that Petitioner "sometimes" used a condom when having sex with her.  He also used a rubber glove.  T.T. 305.

On November 18, 2004, E.R. was walking to school and passed by Hall's home.  Petitioner invited her to come inside the house. E.R. did and, when inside, Petitioner asked her if she wanted her little brother's father out of her mother's home.  E.R. told Petitioner that she did because she was scared.  T.T. 298. Petitioner gave E.R. a clipboard with paper on it and told her to write a note claiming that her little brother's father was sexually abusing her.  T.T. 299.  The claims in this note were untrue. T.T. 301.  After writing the note, E.R. gave it to Petitioner. T.T. 300.  The two then went upstairs into a bedroom.  Petitioner had E.R. lay on the bed, and he proceeded to have sexual intercourse with her.  After Petitioner finished, he went into the bathroom.  E.R. put her pants on and left for school.  T.T. 302-303.  Later that same morning, Petitioner took the note to the Gowanda Police station and gave it to Officer Mark Baltes.  Officer Baltes then contacted Officer Jen Alessi, who was the school resource officer at Gowanda Elementary and Middle Schools.  That afternoon, Petitioner was given a ride to the police station so that police could speak with him about the note.  T.T. 371-372, 427.  Officer Baltes spoke with Petitioner about the note and Petitioner then left the police station.  About an hour later, at

the request of the police, Petitioner returned, by patrol car, to the police station.  There, Officer Alessi conducted an interview regarding the victim's note that he had provided earlier to Officer Baltes.  T.T. 374-375, 430.  Officer Alessi read Petitioner his Miranda rights and he waived them.  T.T. 434.  Officer Alessi then set the note that E.R. had written before Petitioner and indicated to him that E.R. had said she was forced to write the note. T.T. 434.  Petitioner began to cry and, without prompting, Petitioner remarked that "there was no forensic evidence with sodomy."  T.T. 435-437.  At the time this interview was conducted, Officer Alessi was unaware of any allegation of a sodomy against E.R., nor was she informed of  E.R.'s disclosure of sexual abuse until the following day (November 19, 2003).  T.T. 437.  About twenty minutes later, Petitioner was arrested and charged with various misdemeanors.  Hr'g Mins. [H.M.] 22-23.  Subsequently, Petitioner was arrested and charged with the sexual abuse of E.R. H.M. 25, 31.

At trial, E.R. testified that Petitioner had begun sexually abusing her about a month or two after he had moved into her mother's home.  During the period he moved in until just before he moved out, Petitioner made E.R. have sex with him "like every other day or maybe everyday."  T.T. 308.  Eventually, E.R. told her mother about the abuse.  Her mother then called the police, and Officer Alessi of the Gowanda Police Department came to see E.R.

Thereafter, Officer Alessi took E.R. to the hospital where an examination was performed on her.[1]   T.T. 310.   At trial, E.R. testified that she had not disclosed the sexual abuse to anyone because she was afraid Petitioner would hurt her.   Petitioner had threatened to kill her and her mother, and told her that her brothers would be sent to foster care.   T.T. 311.

Prior to trial, the defense moved to suppress Petitioner's statement to police.   A Huntley hearing was conducted on June 17, 2005, and the court denied Petitioner's motion to suppress.   H.M. 41.

A jury trial was conducted on July 18, 19, and 20, 2005 before the Hon. Ronald H. Tills, and Petitioner was found guilty, as charged, of three counts of Rape in the First Degree, one count of Criminal Sexual Act in the First Degree, one count of Course of Sexual Conduct Against a Child in the First Degree, one count of Endangering the Welfare of a Child in the First Degree, and one count of Falsely Reporting an Incident in the Third Degree. Subsequently, he was sentenced as a second violent felony offender to five consecutive terms of twenty-five years imprisonment. Sentencing Mins. [S.M.] 7-8.

On February 8, 2008, the Appellate Division, Fourth Department ("Fourth Department") unanimously affirmed Petitioner's judgment of

---

[1]      The findings of that examination were as follows:  two healed transections on the victim's hymen.   T.T. 489.

conviction, and leave to appeal was denied.  <u>People v. Martina</u>, 48

A.D.3d 1271 (4th Dep't 2008); <u>lv. denied</u>, 10 N.Y.3d 961 (2008).

No collateral motions were filed.

This habeas corpus petition followed, wherein Petitioner seeks

relief on the following grounds:[2] (1) the verdict was against the

weight of the evidence; (2) ineffective assistance of trial

counsel; (3) the trial court erred by refusing to release the

victim's psychological records; (4) Petitioner's statement to

police was involuntary and therefore should have been suppressed;

and (5) his sentence was harsh and excessive.  <u>See</u> Pet., Grounds

One-Four;  Attach., Grounds One-Seven (Dkt. # 1).

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

---

[2]      On or about October 22, 2009, Petitioner moved to stay his petition so that he could return to state court to exhaust his remedies regarding certain claims which were unexhausted in the habeas petition.  Dkt. # 11.  At the time Petitioner filed his habeas petition, three claims were unexhausted: an insufficiency of the evidence claim and a prosecutorial misconduct claim (<u>see</u> Pet., Grounds One, Four), both of which Petitioner raised on direct appeal, but raised as violations of state law only; and, an ineffective assistance of counsel claim based on counsel's failure "to conduct discovery concerning material that was needed to prepare and present a defense at trial" (<u>see</u> Pet., Ground Three), which, liberally construing the petition, was raised on direct appeal, but never reviewed because it involved matters dehors the record.  <u>See</u> <u>Martina</u>, 48 A.D.3d at 1272-1273.  On November 4, 2009, the Court granted Petitioner's motion to stay, ordering that, to the extent the claims in his petition were unexhausted, they were dismissed without prejudice subject to the condition that Petitioner initiate efforts to exhaust those claims within 30 days of the filing of the Order and that Petitioner return to the Court within 30 days of the completion of his effort to exhaust.  The habeas petition was stayed pending Petitioner's exhaustion of the dismissed claims.  Dkt. # 14.  Petitioner failed to subsequently engage in an attempt to exhaust the unexhausted claims in the habeas petition.  On August 26, 2010, the Court lifted the stay.  Dkt. No. 24.   This Court now proceeds with resolution of the remaining, exhausted claims raised in the habeas petition that were not dismissed as a result of the Court's November 4, 2009 stay order (Dkt. # 14).

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner

to the facts of a particular case.  <u>Williams</u>, 529 U.S. at 413;  <u>see also</u> <u>id.</u> at 408-10.  "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently."  <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001).  Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."  <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1);  <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). A habeas corpus petitioner, however, may overcome a procedural default created by the state court's invocation of an "independent and adequate" basis for its decision by (1) showing cause for the default and prejudice attributable thereto, or (2) by demonstrating that a fundamental miscarriage of justice will ensue if the claim is not reviewed by the habeas court. See Harris v. Reed, 489 U.S.

255, 262 (1989) (citing cases).  The "fundamental miscarriage of justice" exception requires the petitioner to make a factual showing that he is "actually innocent" of the crime for which he was convicted.  See id.  It bears noting that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

**IV.   Petitioner's Claims**

**1.   Petitioner's Weight of the Evidence Claim is Not Cognizable**

Petitioner asserts, as he did on direct appeal, that the verdict was against the weight of the evidence.  See Pet., Ground Two; Attach., Point Two.  The Fourth Department rejected this claim on the merits.  See Martina, 48 A.D.3d at 1272.  As discussed below, this claim is not cognizable on habeas review.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review.  See e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  A claim that a verdict was against the weight of the evidence derives from N.Y. Crim. Proc. L. ("CPL") § 470.15(5) which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  CPL § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal

sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Accordingly, this claim provides no basis for habeas relief and is dismissed.

## 2. Petitioner's Claim related to the Psychological Records of the Victim is Procedurally Barred by an Adequate and Independent State Ground

Petitioner asserts, as he did on direct appeal, that the trial court erred in determining, following an in camera review of the victim's psychological records, that Petitioner was not entitled to access to those records. See Attach., Point Five. The Fourth Department rejected this claim on a state procedural ground because Petitioner had failed to properly preserve the issue for appellate review. See Martina, 48 A.D.3d at 1273. Consequently, as discussed below, this claim is procedurally barred from habeas review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment. See Coleman, 501 U.S. at 729.

Here, the state court relied on New York's preservation rule (codified at CPL § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review. See Martina, 48 A.D.3d at 1273. The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground. See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of it.

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. See Harris, 489 U.S. at 262. Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he demonstrated that the Court's failure to review the claim will result in a fundamental miscarriage of justice. Accordingly, Petitioner's claim is dismissed as procedurally defaulted.

3.  **Petitioner's Harsh and Excessive Sentence Claim is Not Cognizable**

Petitioner contends, as he did on direct appeal, that his "sentence was harsh and excessive because this was not a case that required consecutive sentencing." Attach., Point Seven. The Fourth Department rejected this claim on the merits, finding that

Petitioner's sentence "is not unduly harsh or severe." Martina, 48 A.D.3d at 1273. As discussed below, this claim is not cognizable by this Court on habeas review.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range. Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing Underwood v. Kelly, 692 F.Supp. 146 (E.D.N.Y. 1988), aff'd mem., 875 F.2d 857 (2d Cir. 1989)); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Petitioner was sentenced as a second violent felony offender to five consecutive terms of twenty-five years imprisonment. S.M. 7-8. These terms are within the ranges prescribed by New York law. See Penal Law § 70.04 [3][a].

Accordingly, Petitioner's claim is not cognizable, and the claim is dismissed.

**4.  Petitioner's Claim that His Statement to Police was Involuntary and Should Have Been Suppressed is Meritless**

Petitioner contends, as he did on direct appeal, that his statement to police was involuntary and therefore should have been suppressed by the trial court.  See Attach., Point Six.  The Fourth Department rejected this claim on the merits, finding that "[t]he contention  of the defendant that the court erred in refusing to suppress his post-Miranda statement to the police because it was involuntary is without merit.  The record contains no evidence that, in making the statement, defendant's will was overborne so that the statement was not the product of essentially free and unconstrained choice."  Martina, 48 A.D.3d at 1273.  As discussed below, this claim is meritless.

At a pre-trial suppression hearing, the following facts were established:  that police drove Petitioner to the station and placed him in a boardroom; that Petitioner was not under arrest at this time, and he was not placed in handcuffs; Petitioner was already in the boardroom when Officer Alessi entered; that the boardroom in which Petitioner was placed had a large conference table and a desk; that Officer Alessi was dressed in street clothes;  that, upon entering the boardroom, Officer Alessi stated that she was starting an investigation with respect to the incident Petitioner had filed with the police department regarding the letter from the victim, and that she wanted to talk to Petitioner about it;  that Officer Alessi read Petitioner his Miranda rights

-14-

and that he waived them; that, shortly thereafter, Petitioner began to cry and stated, without prompting, that "there was no forensic evidence with sodomy"; after Petitioner made this statement, Officer Alessi arrested Petitioner and charged him with various misdemeanors;  that Petitioner did not appear to be under the influence of drugs or alcohol at the time he made the statement; that Officer Alessi spoke to Petitioner in English and that he responded appropriately; that Officer Alessi made no threats or promises during the course of their conversation; that, at no point throughout the interview, did Petitioner indicate he wished to stop speaking with Officer Alessi;  that Petitioner did not ask for an attorney or anything else during the course of the conversation; that Officer Alessi did not make any accusation against Petitioner at that point regarding sodomy; that, at the time Petitioner made the statement, Officer Alessi did not tell him that it was believed that he had sexually abused E.R.; and that he was not placed under arrest at that time for the sexual abuse of E.R.  H.M. 15-25.

These factual findings describing what transpired between Petitioner and the police are presumed to be correct, and Petitioner has made no attempt to rebut them with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  At the close of the suppression hearing, the trial court determined that the statements to police were voluntary, and the Fourth Department affirmed that determination.  H.M. 41; see Martina, 48 A.D.3d at

1273.  As discussed below, this Court finds no basis to disturb the trial court's determination, as affirmed on appeal, that Petitioner's statements to police were voluntary.

The "ultimate issue of voluntariness is a legal question requiring independent federal determination." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir.1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 287 (1991)); see also Nova v. Bartlett, 211 F.3d 705, 707 (2d Cir. 2000); Mincey v. Arizona, 437 U.S. 385, 398 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; instead, the Court is under a duty to make an independent evaluation of the record). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" Nelson, 121 F.3d at 833 (quoting Green v. Scully, 850 F.2d 894, 901 (2d Cir.), cert. denied, 488 U.S. 945 (1988)).  Factors to be considered include the accused's experience and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically coercive tactics. Id. (citing Green, 850 F.2d at 901).  "'Subsidiary questions, such as the length and circumstances of [an] interrogation," or whether "'the police engaged in the intimidation tactics alleged by the defendant," are entitled to the

presumption of correctness.'" Id. (quoting Miller v. Fenton, 474 U.S. 104, 112, 117 (1985)); see also Towndrow v. Kelly, 98-CV-0509, 2000 U.S. Dist. LEXIS 21969 (N.D.N.Y. Dec. 20, 2000).

In this case, Petitioner was asked by police to come to the station (and did so voluntarily) to discuss the incident involving E.R.'s letter that Petitioner had reported to the police. He was not under arrest at that time and was not physically constrained in any way. Before speaking with Officer Alessi, Petitioner was read and waived his Miranda rights. At no time did Officer Alessi make any threats or promises to him, and there was nothing unusual about the interview room in which Petitioner was questioned to suggest that the location itself was somehow inherently coercive. Petitioner never asked to speak to a lawyer, nor did he indicate to Officer Alessi at any point that he wished to cease the conversation. Officer Alessi did not accuse Petitioner of sodomy during the interview. Spontaneously, without any prompting whatsoever, Petitioner stated to Officer Alessi that there was no forensic evidence with sodomy. Neither the conditions of the police interview nor the conduct of the police support Petitioner's assertion that his statement was involuntary. The Court therefore finds that, under the totality of the circumstances, Petitioner's statement was voluntarily made, and the trial court did not err in refusing to suppress it.

Accordingly, the Court cannot find that the state court's determination of this issue contravened or unreasonably applied settled Supreme Court law.  The claim is therefore dismissed.

## 5.  Petitioner's Ineffective Assistance of Trial Counsel is Meritless

Petitioner argues, as he did on direct appeal, that he received ineffective assistance of trial counsel based on counsel's failure to: (1) object to all but one of the prosecutor's leading questions of the victim; and (2) failing to "adequately object" to the prosecutor's comment on summation that "[Petitioner] likes to have sex with young girls."  Pet., Ground Three; see also Pet'r Br. on Appeal, Point Three (Resp't Ex. B).  As discussed below, this claim is meritless.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different.  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding."  Id.  To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that

-18-

[his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689.  A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690.

### A.   Failure to Object to Leading Questions

Petitioner contends that he received ineffective assistance of counsel because his trial attorney failed to object to all but one of the prosecutor's leading questions of the victim . See Pet., Ground Three; see also Pet'r Br. on Appeal at 33.  That contention is meritless.  Indeed, the record reflects that, on direct examination, the prosecutor asked the victim a number of leading questions.  T.T. 293-313.  Defense counsel did not object to these questions.  However, when the prosecutor asked the witness, "[a]nd [the abuse] started sometime during the spring of 2003?[,]" defense counsel objected.   T.T. 313.   Defense counsel stated, on the record, that he "object[ed] to [the prosecutor] testifying for the witness.  That's a leading question.  I've been giving him some leeway given the young age of the witness but I think that goes over the top, Judge." T.T. 313.  The trial court judge sustained the objection.  T.T. 313.  Based on the facts and circumstances of this case, it was not unreasonable for counsel to have objected to only one of the prosecutor's leading questions.  That is, "[an]

attorney might choose not to object to some leading questions for several colorable reasons, including a desire not to appear obstructionist and thus offend the jury[.]"  <u>Flores v. Keane</u>, 94 Civ. 5096 (RMB)(MHD), 2000 U.S. Dist. LEXIS 21105, * 39 (S.D.N.Y. Dec. 21, 2000), Report and Recommendation Adopted, 2001 U.S. Dist. LEXIS 7719 (S.D.N.Y. June 13, 2001).  Given the young age of the victim in this case and the inherent challenges associated with examination of child witnesses, coupled with a desire to stay in good standing with the jury, it was not unreasonable for counsel to have refrained from objecting from all but one of the prosecutor's leading questions.  To this extent, Petitioner cannot demonstrate that counsel's performance was constitutionally deficient under the first prong of <u>Strickland</u>.

### B. Failure to "Adequately Object" to Prosecutor's Summation

Petitioner argues that he received ineffective assistance because defense counsel failed to "adequately object" to the prosecutor's comment on summation that Petitioner "likes to have sex with young girls."  Pet'r Br. on App. at 34;  T.T. 538.  This claim is also meritless.  The record reflects that, on summation, the prosecutor reminded the jury that the evidence at trial established that Petitioner had sexual intercourse with E.R. when she was nine, ten, and eleven years old.  T.T. 538.  As a preface to this point, and as an initial statement to the jury, the prosecutor stated that, "Louis Martina likes to have sex with young

girls, age [9], age 10, age 11, with [E.R.]." T.T. 538.  Indeed, the prosecutor's statement was improper in various respects. However, defense counsel immediately objected to the statement, the objection was sustained, and a curative instruction was given to the jury to "disregard" it.  T.T. 538.  To the extent Petitioner promptly objected to the statement, the objection was sustained, and an instruction was given (thereby curing any potential prejudice resulting therefrom), further and/or more zealous objection by trial counsel to the statement would have been futile. Therefore, the Court cannot find that counsel's performance was constitutionally deficient within the meaning of Strickland.

Moreover, Petitioner has not alleged prejudice,[3] and this Court remains unconvinced that even if trial counsel had performed as Petitioner wished him to perform, there is a reasonable probability of a more favorable outcome at trial.  Because Petitioner cannot fulfill both prongs of the Strickland test, his ineffective assistance claim fails on the merits.

Accordingly, the state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of settled Supreme Court law, and the claim is therefore dismissed in its entirety.

---

[3]       In fact, Petitioner states in his attachment to the habeas petition that "there is no 'but for test'" with respect to this claim. Attach., Point Three.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 10, 2011
           Rochester, New York

-22-